# LAVINIA WILLIAMS, APPELLEE, v. GRAND LODGE KNIGHTS OF PYTHIAS, APPELLANT.

## Syllabus.

A benefit association which refuses to pay a policy must fail in its defense when it does not establish with certainty the cause upon which it relies in avoidance of the policy.

Appeal from the Civil District Court, No. 113,079, Division "E"; Honorable George H. Théard, Judge. Affirmed.

Sol. Weiss, for plaintiff and appellee.

F. B. Smith, for defendant and appellant.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

This is a suit on a benefit policy. The plaintiff alleges that she is the widow of Charles Williams; that as such she is the beneficiary of an endowment policy of $500 issued by the defendants on the life of her deceased husband, Charles Williams; that he died on July 2, 1914; but that defendants refuse to pay her.

The defense is as follows:

"Defendant denies that at the time of the death of the said Charles Williams he was a member in good standing of Garden District Lodge No. 41 of the said Knights of Pythias. But avers the truth to be that the deceased Charles Williams died of 'Chronic Interstitial Nephritis' contracted before his reinstatement to membership in the said Garden District Lodge No. 41, and that under the laws, rules and regulations of defendant institution, the said Endowment Policy became null and void and of no effect, and all payments to his beneficiary or beneficiaries are forfeited, for the reason that the

statements as to the condition of the health of the said deceased, Charles Williams, at the time of his application for reinstatement to membership in defendant order made by him to the medical registrar, were untrue, which fact was unknown to your defendant."

There was judgment for the plaintiff for $100 and defendant has appealed.

The only question for solution is whether the "statements as to the condition of the health of the deceased Charles Williams at the time of his application for reinstatement to membership in defendant order made by him and answered by him to the medical registrar were untrue" or not.

Charles Williams' application for reinstatement in the "Chivalric Order" of the Knights of Pythias, "Garden District," Lodge No. 41, is dated August 4th, 1913. There are no declarations or representations accompanying this application.

The "Committee appointed to investigate the character and standing" of the applicant reported: "We have attended to our duty and find that Mr. Charly Williams was favorable—", all in accordance with Article 7 of Sec. 1 of the Constitution for subordinate lodges.

The "Medical Laws" provide that there shall be a "Grand Medical Registrar" and a "Medical Registrar" for each subordinate lodge.

The "Grand Medical Registrar" is elected at each annual session of the Grand Lodge, and the "Medical Registrar" is " selected at the same time as other officers of the lodge."

"It is made the duty of the Medical Registrar to examine the condition of the applicant for membership in the lodge, and give a certificate of the same

after said application has been favorably balloted for. The Grand Medical Registrar shall approve the certificate, and no applicant shall be initiated nor shall the Grand Chancellor issue any policy unless the medical certificate is approved by the Grand Medical Registrar. The application for membership is made a part of the policy and 'any wilful false statements made in the application, or to the examining physician, shall render this contract void."

Dr. J. E. Mullon was the "Medical Registrar" of the Garden District Lodge No. 41. He examined Charles Williams on August 24, 1913, and made a written report. To the question: Are the kidneys and bladder free from any indication of disease? He answered: "Yes," He concluded with the words: "After carefully examining the applicant I recommend that he is fit for membership in your Lodge of Knights of Pythias." This certificate was approved by A. W. Brazier, Grand Medical Director, on August 26th, 1913.

Charles Williams died on July 2, 1914, about ten months later.

His wife testifies in this case that at the time of his reinstatement he was not sick but was perfectly well and working. Doctor Mullon testifies that he examined Williams for reinstatement, and that he did not find him suffering from any chronic illness whatever, and that Williams did not make any representation or statements to him which he subsequently found to be false with regard to his physical condition or ailment, and that, as far as he knew, Williams did not die of any chronic disease he had at the time when he examined him for reinstatement, in fact he had no disease at all at the time he examined him.

343

Opposed to this evidence is the death certificate of Charles Williams, signed by the same J. E. Mullon, who certifies that he attended him during his last illness and that he died of "Chronic Interstitial Nephritis."

Doctors A. W. Brazier the "Grand Medical Registrar" and Raleigh J. Coker both testify that any person who dies of Chronic Nephritis must have been afflicted with it more than ten months before his death, because it is a progressive disease that comes in old age and (follows some other form of kidney trouble; that the patient may not know he has it, but that the physician should know it.

If we assume that this opinion is correct then this dilemma inevitably follows, namely; that if Williams died of Nephritis, he must have had it ten months before, and his examination certificate is not correct; or, if he did not have nephritis when he was examined, then his death certificate is not correct. To select either horn of the dilemma might be a reflecteion upon Dr. Mullon. We prefer to believe that both certificates of Dr. Mullon, issued after an examination of the patient and after attendance during his last illness were correct, and to disregard, in this case at least, as an exception, the theoretical conclusions of the two experts. Speculative opinions of medical men lose much of their authority when confronted with facts. 1st Ct. of App., 9.

We are also inclined to the opinion that after the "Medical Registrar," selected by the Lodge, has examined the applicant and recommended him as fit for membership and after the "Grand Medical Registrar" has approved the recommendation, that the defendants could not resist payment upon any ground passed upon by them in the absence of fraud on the part of the applicant. It would look like a breach of good faith.

But it would seem that it made no difference that Williams had nephritis at the time of his examination. The cause for avoiding the contract was "any wilful false statement made in the application or to the examining physisian."

There is no evidence of any false statement in Williams'. application, and Dr. Mullon testified that the applicant made none such to him.

The judgment is therefore affirmed.

Opinion and decree, May 14th, 1917.